| | |
|---|---|
| Fill in this information to identify the case: | |
| Debtor 1 | CHARLES MICHAEL COOK SR |
| Debtor 2 (Spouse, if filing) | KATHLEEN DOROTHY COOK |
| United States Bankruptcy Court for the: | Eastern District of Wisconsin (State) |
| Case number | 20-23722-kmp |

Form 4100R

# Response to Notice of Final Cure Payment

10/15

According to Bankruptcy Rule 3002.1(g), the creditor responds to the trustee's notice of final cure payment.

## Part 1: Mortgage Information

**Name of creditor:** US Bank Trust National Association

**Court claim no.** (if known): 4

**Last 4 digits** of any number you use to identify the debtor's account: 5 7 6 5

**Property address:** 7353 S. Logan Ave
Number    Street

_____

Oak Creek, WI 53154
City    State    ZIP Code

## Part 2: Prepetition Default Payments

*Check one:*

☑ Creditor agrees that the debtor(s) have paid in full the amount required to cure the prepetition default on the creditor's claim.

☐ Creditor disagrees that the debtor(s) have paid in full the amount required to cure the prepetition default on the creditor's claim. Creditor asserts that the total prepetition amount remaining unpaid as of the date of this response is:    $ _____

## Part 3: Postpetition Mortgage Payment

*Check one:*

☐ Creditor states that the debtor(s) are current with all postpetition payments consistent with § 1322(b)(5) of the Bankruptcy Code, including all fees, charges, expenses, escrow, and costs.

The next postpetition payment from the debtor(s) is due on:    ___/___/_____
MM / DD / YYYY

☑ Creditor states that the debtor(s) are not current on all postpetition payments consistent with § 1322(b)(5) of the Bankruptcy Code, including all fees, charges, expenses, escrow, and costs.

Creditor asserts that the total amount remaining unpaid as of the date of this response is:

a. Total postpetition ongoing payments due:    (a) $ 1,238.96

b. Total fees, charges, expenses, escrow, and costs outstanding:    + (b) $ 775.00

c. **Total**. Add lines a and b.    (c) $ 2,013.96

Creditor asserts that the debtor(s) are contractually obligated for the postpetition payment(s) that first became due on:    05/01/2021
MM / DD / YYYY

| Debtor 1 | CHARLES MICHAEL COOK SR | Case number (*if known*) 20-23722-kmp |
|---|---|---|
| | First Name  Middle Name  Last Name | |

## Part 4: Itemized Payment History

If the creditor disagrees in Part 2 that the prepetition arrearage has been paid in full or states in Part 3 that the debtor(s) are not current with all postpetition payments, including all fees, charges, expenses, escrow, and costs, the creditor must attach an itemized payment history disclosing the following amounts from the date of the bankruptcy filing through the date of this response:

- all payments received;
- all fees, costs, escrow, and expenses assessed to the mortgage; and
- all amounts the creditor contends remain unpaid.

## Part 5: Sign Here

**The person completing this response must sign it. The response must be filed as a supplement to the creditor's proof of claim.**

*Check the appropriate box::*

☐ I am the creditor.
☒ I am the creditor's authorized agent.

**I declare under penalty of perjury that the information provided in this response is true and correct to the best of my knowledge, information, and reasonable belief.**

Sign and print your name and your title, if any, and state your address and telephone number if different from the notice address listed on the proof of claim to which this response applies.

✗ /s/ Bryan M. Ward
Signature

Date  6 / 2 / 2021

Print  Bryan M. Ward
First Name  Middle Name  Last Name

Title  Attorney, Of Counsel

Company  Eric Feldman & Associates PC

**If different from the notice address listed on the proof of claim to which this response applies:**

Address  5555 N. Port Washington Road, Suite 305
Number  Street

Milwaukee, WI  53217
City  State  ZIP Code

Contact phone  ( 414 ) 271– 4849

Email  bmw@bryanwardlaw.c

06/02/21

CHARLES M COOK                                                      Account Number ████████5765
KATHLEEN D COOK
7353 S LOGAN AVENUE

OAK CREEK          WI 53154

Collateral

| | | | | | |
|---|---|---|---|---|---|
| Original Balance | 103000.00 | P&I Payment | 716.65 | Next Due Date | 05/01/21 |
| Current Balance | 111766.15 | Escrow Payment | 416.96 | Last Payment Date | 05/15/21 |
| Escrow Balance | 6200.57 | Opt Ins Payment | 0.00 | Current Interest Rate | 6.63000 |
| Unapplied Balance | 0.00 | Buydown | 0.00 | | |
| Fee Balance | -970.00 | Total Payment | 1133.61 | | |

History from 06/01/11 through 06/02/21    Beginning statement balance    92859.73    Ending statement balance    111766.15

| Posting Date | Effective Date | Paid To Date | Transaction Description | Total Amount | Principal | Interest | Escrow | Insurance | Other | |
|---|---|---|---|---|---|---|---|---|---|---|
| 04/03/19 | 04/03/19 | 03/01/18 | Cash Receipt | 928.75 | 0.00 | 0.00 | 0.00 | 0.00 | 928.75 | N |
| 04/10/19 | 04/10/19 | 03/01/18 | Admin Adj | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 04/12/19 | 04/04/19 | 05/01/18 | Payment | 396.59 | 118.54 | 1025.00 | 713.96 | 0.00 | -1460.91 | N |
| 05/09/19 | 05/02/19 | 06/01/18 | Payment | 395.64 | 59.76 | 512.01 | 356.98 | 0.00 | -533.11 | N |
| 06/06/19 | 06/06/19 | 06/01/18 | Cash Receipt | 928.75 | 0.00 | 0.00 | 0.00 | 0.00 | 928.75 | N |
| 06/11/19 | 06/11/19 | 06/01/18 | Cash Receipt | -928.75 | 0.00 | 0.00 | 0.00 | 0.00 | -928.75 | N |
| 06/11/19 | 06/11/19 | 06/01/18 | Fee Billed | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15.00 | F |
| 07/12/19 | 07/11/19 | 07/01/18 | Payment | 943.75 | 60.09 | 511.68 | 356.98 | 0.00 | 15.00 | N |
| 07/18/19 | 06/28/19 | 07/01/18 | Cash Receipt | 393.76 | 0.00 | 0.00 | 0.00 | 0.00 | 393.76 | N |
| 09/03/19 | 09/03/19 | 07/01/18 | Cash Receipt | 928.75 | 0.00 | 0.00 | 0.00 | 0.00 | 928.75 | N |
| 09/09/19 | 09/03/19 | 09/01/18 | Payment | 928.75 | 121.18 | 1022.36 | 713.96 | 0.00 | -928.75 | N |
| 09/09/19 | 09/09/19 | 09/01/18 | Cash Receipt | -538.13 | 0.00 | 0.00 | 0.00 | 0.00 | -538.13 | N |
| 09/30/19 | 09/30/19 | 09/01/18 | Fee Billed | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 275.00 | F |
| 10/24/19 | 10/24/19 | 09/01/18 | Fee Billed | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 13.50 | F |
| 11/05/19 | 11/05/19 | 09/01/18 | Cash Receipt | 928.75 | 0.00 | 0.00 | 0.00 | 0.00 | 928.75 | N |
| 11/19/19 | 11/05/19 | 10/01/18 | Miscellaneous | 0.00 | 61.09 | 510.68 | 356.98 | 0.00 | -928.75 | N |
| 12/18/19 | 12/18/19 | 10/01/18 | Tax Enmasse | -4308.71 | 0.00 | 0.00 | -4308.71 | 0.00 | 0.00 | |
| 12/31/19 | 12/31/19 | 10/01/18 | Ins Enmasse | -690.00 | 0.00 | 0.00 | -690.00 | 0.00 | 0.00 | |

**B**= *Buydown/Subsidy*         **F**= *Fee Payment*         **L**= *Late Charges*         **N**= *Unapplied*         **C**= *Uncollected*

06/02/21                                                            Account Number ████████5765

CHARLES M COOK
KATHLEEN D COOK

| Posting Date | Effective Date | Paid To Date | Transaction Description | Total Amount | Principal | Interest | Escrow | Insurance | Other | |
|---|---|---|---|---|---|---|---|---|---|---|
| 01/09/20 | 12/18/19 | 10/01/18 | Payment | 390.62 | 0.00 | 0.00 | 0.00 | 0.00 | 404.12 | FN |
| 01/30/20 | 01/30/20 | 10/01/18 | Miscellaneous | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1231.00 | F |
| 02/05/20 | 02/05/20 | 10/01/18 | Fee Billed | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1050.00 | F |
| 02/12/20 | 02/12/20 | 10/01/18 | Fee Billed | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 181.00 | F |
| 02/28/20 | 01/31/20 | 11/01/18 | Payment | 525.25 | 61.43 | 510.34 | 356.98 | 0.00 | -403.50 | N |
| 03/04/20 | 03/04/20 | 11/01/18 | Fee Billed | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 13.50 | F |
| 03/17/20 | 03/17/20 | 11/01/18 | Payment | -347.29 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | FN |
| 06/16/20 | 06/08/20 | 12/01/18 | Payment | 1715.23 | 61.77 | 510.00 | 356.98 | 0.00 | 786.48 | N |
| 06/29/20 | 06/29/20 | 12/01/18 | Miscellaneous | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 804.40 | F |
| 07/15/20 | 07/15/20 | 12/01/18 | Miscellaneous | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 07/16/20 | 07/13/20 | 02/01/19 | Payment | 1715.23 | 124.56 | 1018.98 | 713.96 | 0.00 | -142.27 | N |
| 08/20/20 | 08/17/20 | 04/01/19 | Payment | 1715.23 | 125.94 | 1017.60 | 713.96 | 0.00 | -142.27 | N |
| 09/25/20 | 09/25/20 | 06/01/19 | Payment | 1715.23 | 127.33 | 1016.21 | 713.96 | 0.00 | -142.27 | N |
| 10/30/20 | 10/30/20 | 06/01/19 | Miscellaneous | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 11/17/20 | 11/13/20 | 07/01/19 | Payment | 1715.23 | 64.20 | 507.57 | 356.98 | 0.00 | 786.48 | N |
| 12/17/20 | 12/08/20 | 08/01/19 | Payment | -2192.45 | 64.55 | 507.22 | -2927.92 | 0.00 | 163.70 | N |
| 12/22/20 | 12/22/20 | 08/01/19 | Ins Enmasse | -730.00 | 0.00 | 0.00 | -730.00 | 0.00 | 0.00 | |
| 01/05/21 | 01/05/21 | 08/01/19 | Fee Billed | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 150.00 | F |
| 01/27/21 | 01/25/21 | 09/01/19 | Payment | 1715.23 | 64.91 | 506.86 | 979.76 | 0.00 | 163.70 | N |
| 03/17/21 | 03/11/21 | 11/01/19 | Payment | 1706.44 | 130.88 | 1012.66 | 1959.52 | 0.00 | -1396.62 | N |
| 03/23/21 | 03/23/21 | 09/01/19 | Miscellaneous | 0.00 | -130.88 | -1012.66 | -1959.52 | 0.00 | 3103.06 | N |
| 03/26/21 | 03/26/21 | 09/01/19 | Miscellaneous | 0.00 | -20120.37 | 18120.64 | 11122.88 | 0.00 | -4984.17 | FL |
| 03/29/21 | 03/26/21 | 03/01/21 | Payment | 2848.27 | 0.00 | 0.00 | 0.00 | 0.00 | 2848.27 | N |
| 03/30/21 | 03/30/21 | 03/01/21 | Miscellaneous | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -342.96 | L |
| 03/31/21 | 03/31/21 | 03/01/21 | Miscellaneous | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 04/05/21 | 04/05/21 | 03/01/21 | Fee Billed | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 195.00 | F |
| 04/09/21 | 03/31/21 | 03/01/21 | Miscellaneous | 0.00 | 0.00 | 0.00 | 5000.00 | 0.00 | -5000.00 | N |
| 04/14/21 | 04/14/21 | 03/01/21 | Miscellaneous | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 775.00 | F |

| Posting Date | Effective Date | Paid To Date | Transaction Description | Total Amount | Principal | Interest | Escrow | Insurance | Other |
|---|---|---|---|---|---|---|---|---|---|
| 05/18/21 | 05/15/21 | 04/01/21 | Payment | 1917.22 | 98.60 | 618.05 | 1200.57 | 0.00 | 0.00 |
| 05/21/21 | 05/21/21 | 04/01/21 | Cash Receipt | 917.33 | 0.00 | 0.00 | 0.00 | 0.00 | 917.33 N |

**B**= *Buydown/Subsidy*        **F**= *Fee Payment*        **L**= *Late Charges*        **N**= *Unapplied*        **C**= *Uncollected*

 

February 24th, 2021      VIA OVERNIGHT COURIER

Charles M. Cook Sr. AKA Charles M. Cook and Kathleen D. Cook
7353 South Logan Avenue
Oak Creek, Wisconsin 53154

Re:   Loan No.: ████5765
      Property Address: 7353 South Logan Avenue, Oak Creek, Wisconsin 53154

Dear Charles M. Cook Sr. AKA Charles M. Cook and Kathleen D. Cook:

Enclosed please find two original copies of a Loan Modification Document Package and one copy for your records, which RUTH RUHL, P.C. ("Firm") has prepared pursuant to the request of its client, BSI Financial Services ("BSI"). Please review the Loan Modification Agreement. If it is consistent with your prior discussions with BSI, please execute the documents **in the presence of a notary** and return to BSI in the enclosed envelope **provided within 14 days of receipt of this package**. Please sign your name exactly as it is printed under the signature line. Witness signatures must be from two different individuals and require their printed name under their signature.

In addition to the documents, please include your initial contribution in certified funds, in the amount of $0.00. This will be necessary to complete and record the modification and includes charges for corporate advances by BSI, including but not limited to attorney fees and costs, returned check fees and late charge fees. Additional sums may become due as a result of the timing of this letter and agreement. Nothing in this letter or agreement precludes collection of additional advances by BSI.

The Agreement changes the monthly principal and interest amount of your payment to $716.65, effective March 1st, 2021. The taxes and insurance portion of the monthly payment is $1,200.57, with a total payment of $1,917.22 due April 1st, 2021. Please note that the tax and insurance payment amount is subject to change upon escrow analysis. If you are currently making payments under a repayment agreement with BSI, you are responsible for continuing your payments to BSI through the effective date of the Agreement. Failure to make the payments may result in BSI's rescission of this loss mitigation option.

If you have any questions regarding the Loan Modification Agreement, please consult with your BSI Loss Mitigation representative. Please note that the Firm is not attempting to collect the debt and its role is to prepare the documents and ensure that the documents are in a recordable format.

Very truly yours,

BSI Financial Services
Enclosures

BSI Financial Services is a debt collector. BSI is attempting to collect a debt and any information obtained will be used for that purpose. However, if you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against you personally, but is notice of a possible enforcement of the lien against the collateral property.

**LOAN MODIFICATION AGREEMENT**

**After Recording Return To:**
RUTH RUHL, P.C.
Attn: Recording Department
12700 Park Central Drive, Suite 850
Dallas, Texas 75251

**Parcel ID Number:** 767-0041

**This Instrument Was Drafted By:**
Ruth Ruhl, Esquire
RUTH RUHL, P.C.
12700 Park Central Drive, Suite 850
Dallas, TX 75251

_____[Space Above This Line For Recording Data]_____

Loan No.: ▇▇▇▇5765
Investor Loan No.: ▇▇▇▇5765

# LOAN MODIFICATION AGREEMENT
(Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 24th day of February, 2021, between Charles M. Cook Sr. AKA Charles M. Cook and Kathleen D. Cook, husband and wife

("Borrower")

and U.S. Bank Trust National Association, as Trustee of the Bungalow Series III Trust by its attorney-in-fact, Service One Inc. D/B/A BSI Financial Services

("Lender"),

amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated January 28th, 2002, recorded March 6th, 2002, and recorded in Book/Liber 5278, Page 3325, Instrument No. 8237298, of the Official Records of Milwaukee County, Wisconsin, and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at 7353 South Logan Avenue, Oak Creek, Wisconsin 53154

the real property described being set forth as follows:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Loan No.: 765

      In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

      1.      As of April 1st, 2021, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $ 111,864.75, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

      2.      Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 6.630 %, from March 1st, 2021. Borrower promises to make monthly payments of principal and interest of U.S. $ 716.65, beginning on the 1st day of April, 2021, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 6.630 % will remain in effect until principal and interest are paid in full. If on March 1st, 2051, (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

      3.      If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

      If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

      4.      Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the specified date in paragraph No. 1 above:

      (a)      all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

      (b)      all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

      5.      Borrower understands and agrees that:

      (a)      All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

      (b)      All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

Loan No.: ██████5765

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f) Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging☐.

(g) Borrower hereby absolutely and unconditionally assigns and transfers to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon this assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold estate.

Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default under this Agreement, pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii)Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments, and other charges on the Property, and then to the sums secure by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9 of the Security Instrument.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Loan No.: ████5765

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

6. If applicable, by this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligations to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

7. Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund Borrower any Funds held by Lender.

Loan No.: ███████5765

___3/19/21___      _/s/ Charles M. Cook_ (Seal)
Date                                 Charles M. Cook Sr. AKA Charles M. Cook —Borrower
                                            **PLEASE SIGN HERE**

___3-19-21___      _/s/ Kathleen D. Cook_ (Seal)
Date                                 Kathleen D. Cook **PLEASE SIGN HERE** —Borrower

_____      _____ (Seal)
Date                                     —Borrower

_____      _____ (Seal)
Date                                     —Borrower

## BORROWER ACKNOWLEDGMENT

**PLEASE NOTARIZE**

State of    Wisconsin        §
                            §
County of   Milwaukee      §

The foregoing instrument was acknowledged before me   _March 19_  , _2021_ *[date]*, by Charles M. Cook Sr. AKA Charles M. Cook and Kathleen D. Cook

*[name of person acknowledged].*

(Seal) [Notary Seal: BRENDA R. MARKS, NOTARY PUBLIC, STATE OF WISCONSIN]

_/s/ Brenda R. Marks_    Notary Signature
Brenda R. Marks    Type or Print Name of Notary
Notary Public, State of _WI_
My Commission Expires: _03/18/2024_

Loan No.: ████████765

# LOAN MODIFICATION AGREEMENT
# BANKRUPTCY DISCLOSURE ADDENDUM

THIS LOAN MODIFICATION AGREEMENT BANKRUPTCY DISCLOSURE ADDENDUM is made this 24th day of February, 2021, and is incorporated into and shall be deemed to amend and supplement the Loan Modification Agreement of the same date, given by the undersigned (the "Borrower") which modifies Borrower's Note and Security Instrument to U.S. Bank Trust National Association, as Trustee of the Bungalow Series III Trust by its attorney-in-fact, Service One Inc. D/B/A BSI Financial Services
(the "Lender")

and covers the Property located at:

7353 South Logan Avenue, Oak Creek, Wisconsin 53154
*[Property Address]*

In addition to the covenants and agreements made in the Loan Modification Agreement, the Borrower and Lender covenant and agree as follows:

1. **Borrower has filed for a Chapter 13 bankruptcy and, Lender's final approval of the Loan Modification Agreement is contingent upon approval of the Loan Modification Agreement by the bankruptcy court, if required.**
2. **AFTER** execution of the Loan Modification Agreement, the bankruptcy court may award the Borrower a Chapter 13 bankruptcy discharge upon completion of the Chapter 13 plan payments.
3. Borrower understands and acknowledges that Borrower has had an opportunity to consult an attorney of Borrower's own choosing before Borrower executed the Loan Modification Agreement and this Loan Modification Agreement Bankruptcy Disclosure Addendum, and Borrower has either consulted with an attorney or has declined the opportunity to consult with an attorney.

Except as otherwise specifically provided in this Loan Modification Agreement Bankruptcy Disclosure Addendum, the terms of the Loan Modification Agreement will remain unchanged and in full effect.

_____  -Borrower
Charles M. Cook Sr. AKA Charles M. Cook  **PLEASE SIGN HERE**

_____  -Borrower
Kathleen D. Cook **PLEASE SIGN HERE**

_____  -Borrower

_____  -Borrower

LOAN MODIFICATION AGREEMENT BANKRUPTCY DISCLOSURE ADDENDUM    Page 1 of 2
CHAPTER 13 ACTIVE BANKRUPTCY

Loan No.: █████5765

# NOTICE OF NO ORAL AGREEMENTS

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

**Receipt of Notice:** The undersigned hereby represents and warrants that I/we have each received and read a copy of this Notice on or before the execution of the "Loan Agreement." "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____ -Borrower
Charles M. Cook Sr. AKA Charles M. Cook **PLEASE SIGN HERE**

_____ -Borrower
Kathleen D. Cook **PLEASE SIGN HERE**

_____ -Borrower

_____ -Borrower

_____ -Borrower

_____ -Borrower

NOTICE OF NO ORAL AGREEMENTS (MULTISTATE)  Page 1 of 1

Loan No.: ████5765

# CORRECTION AGREEMENT

**Borrower(s):** Charles M. Cook Sr. AKA Charles M. Cook and Kathleen D. Cook

**Property:** 7353 South Logan Avenue, Oak Creek, Wisconsin 53154

Words used in this Agreement are defined below. Words in the singular mean and include the plural and vice versa.

**"Borrower"** is Charles M. Cook Sr. AKA Charles M. Cook and Kathleen D. Cook.

**"Lender"** is U.S. Bank Trust National Association, as Trustee of the Bungalow Series III Trust by its attorney-in-fact, Service One Inc. D/B/A BSI Financial Services
, and its successors or assigns.
**"Loan"** means the debt evidenced by the Note and all sums due under the Security Instrument.
**"Note"** means the promissory note(s) signed by Borrower in favor of Lender or any assignee of Lender.
**"Security Instrument"** means the Deed of Trust/Mortgage/Security Deed, signed by Borrower in favor of Lender, securing payment of the Note.

AGREEMENT TO CORRECT OR PROVIDE ADDITIONAL DOCUMENTATION OR FEES: In consideration of the Loan Modification Agreement offered by Lender in the amount of $111,864.75 , which modifies the Note and Security Instrument, and regardless of the reason for any loss, misplacement, omission, misstatement or inaccuracy in any Loan documentation, Borrower agrees as follows: If any document is lost, misplaced, omitted, misstated or inaccurately reflects the true and correct terms and conditions of the Loan, upon request of Lender (including any assignee of Lender), Borrower will comply with Lender's request to execute, acknowledge, initial and/or deliver to Lender any documentation Lender deems necessary to replace and/or correct the lost, misplaced, omitted, misstated or inaccurate document(s). All documents Lender requests of Borrower shall be referred to as "Requested Documents." Borrower agrees to deliver the Requested Documents within ten (10) days after receipt by Borrower of a written request for such replacement. Borrower does hereby agree to comply with Lender's request to assure that the Loan documentation executed this date will enable Lender to seek insurance or guaranty from the Department of Housing and Urban Development (HUD) or Department of Veteran's Affairs (VA), if applicable, or to conform with and be acceptable to the Federal National Mortgage Association (FNMA), Federal Home Loan Mortgage Corporation (FHLMC), Government National Mortgage Association (GNMA), or any other investor.

**REQUEST BY LENDER:** Any request under this Agreement may be made by the Lender (including assignees and persons acting on behalf of the Lender) and shall be prima facie evidence of the necessity for same. A written statement addressed to Borrower at the address indicated in the Loan documentation shall be considered conclusive evidence of the necessity for Requested Documents.

**BORROWER LIABILITY:** If Borrower fails or refuses to execute, acknowledge, initial or deliver the Requested Documents to Lender within ten (10) days after being requested to do so by Lender, Borrower understands that Lender is relying on the representations contained herein and agrees to be liable for any and all loss or damage which Lender reasonably sustains thereby including, but not limited to, all reasonable attorneys' fees and costs incurred by Lender.

Case 20-23722-kmp    Doc 41    Filed 06/02/21    Page 13 of 19

This Agreement shall inure to the benefit of Lender's successors and assigns and be binding upon the heirs, devises, personal representatives, successors and assigns of Borrower.

ACKNOWLEDGMENT OF RECEIPT

I hereby acknowledge receipt of this Correction Agreement and further acknowledge that I understand its provisions. Words used in this Correction Agreement mean and include the plural and vice versa.

_____  _____
Charles M. Cook Sr. AKA    -Borrower (Date)    Kathleen D. Cook    -Borrower (Date)
Charles M. Cook  **PLEASE SIGN HERE**           **PLEASE SIGN HERE**

[Signed: Kathleen Cook 3-19-21]

_____  _____
                -Borrower (Date)                            -Borrower (Date)

Loan No.: █████5765

# ATTORNEY SELECTION NOTICE

By signing below, it is understood and agreed that you may hire a lawyer or attorney to advise you regarding this transaction and its consequences.

_____
Charles M. Cook Sr. AKA    -Borrower (Date)
Charles M. Cook    **PLEASE SIGN HERE**

_____
Kathleen D. Cook    -Borrower (Date)
**PLEASE SIGN HERE**

_____
-Borrower (Date)

_____
-Borrower (Date)

_____
-Borrower (Date)

_____
-Borrower (Date)

ATTORNEY SELECTION NOTICE -MULTISTATE    Page 1 of 1

Case 20-23722-kmp    Doc 41    Filed 06/02/21    Page 15 of 19

**Exhibit A**

LOT 13, BLOCK 17, IN MANOR MARQUETTE ADDITION NO. 2, BEING A
SUBDIVISION OF A PART OF THE NORTH EAST 1/4 OF SECTION 9, TOWNSHIP
5 NORTH, RANGE 22 EAST, IN THE CITY OF OAK CREEK, MILWAUKEE
COUNTY, AND STATE OF WISCONSIN.
A.P.N. #: 767-0041

Loan No.: ███████5765

U.S. Bank Trust National Association,
as Trustee of the Bungalow Series III   –Lender
Trust by its attorney-in-fact, Service
One Inc. D/B/A BSI Financial
Services

APR 0 2 2021
-Date

By: *Cheryl Mallory*
Printed Name: **Cheryl Mallory**
Its: **Assistant Vice President**

(No Seal)

## LENDER ACKNOWLEDGMENT

State of     Texas       §
                         §
County of    Dallas      §

The foregoing instrument was acknowledged before me this   April 02  , 2021 [date],
by **Cheryl Mallory**, **Assistant Vice President** [name
of officer or agent, title of officer or agent] of U.S. Bank Trust National Association, as Trustee of the Bungalow
Series III Trust by its attorney-in-fact, Service One Inc. D/B/A BSI Financial Services
, on behalf of said entity.

(Seal)

ASHLEY AZURE
Notary ID #129190392
My Commission Expires
November 2, 2024

*Ashley Azure*   Notary Signature
**Ashley Azure**
Type or Print Name of Notary
Notary Public, State of   Texas
My Commission Expires:  11/02/24

ACKNOWLEDGMENT (WISCONSIN)                                                Page 6 of 6

Loan No.: ████5765

Service One Inc. D/B/A BSI Financial
Services as attorney in fact for U.S.  —Lender
Bank Trust National Association, as
Trustee of the Bungalow Series III
Trust

APR 0 2 2021
-Date

By: *Cheryl Mallory*
Cheryl Mallory
Its: Assistant Vice President

**LOAN MODIFICATION AGREEMENT BANKRUPTCY DISCLOSURE ADDENDUM**  Page 2 of 2
**CHAPTER 13 ACTIVE BANKRUPTCY**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

In re: Charles Michael Cook, Sr. and  Case No.: 20-23722-kmp
Kathleen Dorothy Cook,
                Debtors        Chapter 13

CERTIFICATE OF MAILING

I, Bryan M. Ward, certify that on the date of 6/2/2021, copies of these documents—Response to Notice of Final Cure Payment, Certificate of Mailing—were mailed, properly enclosed in a postage paid envelope, or served electronically if the party accepts electronic service, to the following:

| | |
|---|---|
| Via US Mail: | Charles Michael Cook, Sr. and Kathleen Dorothy Cook<br>7353 S. Logan Ave.<br>Oak Creek, WI 53154 |
| Via ECF: | Geraci Law LLC<br>Chapter 13 Trustee<br>U.S. Bankruptcy Trustee |

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

*[signature]*

Bryan M. Ward
3127 W. Wisconsin Avenue
Milwaukee, WI 53208
414-271-4849

*This is an attempt to collect a debt and any information obtained will be used for that purpose. If you have previously received a discharge in a federal bankruptcy case, this communication is not, and should not be construed as, an attempt to hold you personally liable for any discharged debt.*